UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
LINDA ANTONIA BAEZ,

                Plaintiff,

      - against -

VISITING NURSE SERVICE OF NEW YORK
FAMILY CARE SERVICE,

                Defendant.
----------------------------------------X

**MEMORANDUM AND ORDER**

**10 Civ. 6210 (NRB)**

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Plaintiff Linda Baez brings this action against defendant Family Care Service, alleging race and gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the New York State Human Rights Law, N.Y. Exec. Law § 296, as well as asserting retaliation claims deriving from Title VII, New York State law, and unspecified "whistleblower" provisions. Presently before us is defendant's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

     For the reasons stated herein, defendant's motion is granted.

## BACKGROUND[1]

Defendant, a subsidiary of Visiting Nurse Service of New York, provides home-attendant and housekeeping services pursuant to a contract with the New York City Human Resources Administration. Plaintiff was employed by defendant as a receptionist for the entirety of the period relevant to the complaint, until her termination on November 3, 2009.

In or around October and November of 2007, plaintiff complained to various members of defendant's management about an unauthorized deduction from her pay. By December 21, 2007, the issue regarding the deduction had been resolved. At the same time plaintiff was dealing with the unauthorized deductions, she also complained to management about the attitude and time-recording procedures of a coworker, Maria Semidey.

After making her grievances known, plaintiff experienced conflict from a number of sources, of which the most significant were: (1) plaintiff's manager Eva Burns began paying closer attention to plaintiff's attendance and time-sheet entries; (2) plaintiff was not directly provided with a copy of an internal memorandum; (3) Semidey threw an envelope at plaintiff and laughed, referring to it as "airmail"; (4) Semidey hurried

---

[1] The following facts, which we assume to be true for the purposes of this motion, are drawn from the Amended Complaint and the exhibits thereto. To the extent necessary for context, we have also drawn from defendant's Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint and the exhibits thereto.

plaintiff while she was on a phone call; (5) Burns told
plaintiff on at least one occasion that she was going to "smack"
her; (6) at a ceremony recognizing employees' tenure working for
defendant, plaintiff's title was announced incorrectly;
(7) defendant's telephone system and attendant protocol changed
without providing plaintiff advance notice; (8) plaintiff's coat
and radio were damaged at work by an unidentified person or
persons; and (9) plaintiff's keys went missing while at work.

Plaintiff made complaints about several of the above
incidents to Burns and other members of management, but they
took no corrective action. At a meeting Burns convened to
discuss the interpersonal problems between plaintiff and
Semidey, Semidey responded to plaintiff's complaint by asking
plaintiff, "[W]hy don't you be a woman[?]" and telling Burns to
fire plaintiff. Burns noted that she would need to reassign the
two employees if they could not get along.

Plaintiff filed a complaint ("Charge I") with the New York
State Division of Human Rights (the "NYSDHR") and the Equal
Employment Opportunity Commission (the "EEOC") on August 25,
2008, alleging discrimination "[d]ue to my complaint to
compliance officers." (Affirmation of Rebecca G. Fischer
("Fischer Aff."), Ex. 1 at 7.) The complaint referred generally
to "verbal abuse" from Semidey and Burns but otherwise did not
mention any of the above events. (Id. at 8.) The NYSDHR

3

dismissed Charge I on February 10, 2009 for lack of evidence to support the allegations and the absence of any adverse event, (id., Ex. 6 at 2-3), and the EEOC adopted the NYSDHR's findings on October 5, 2009. (Id., Ex. 7.)

Plaintiff's conflicts at work, and elsewhere, continued after she filed Charge I. Most notably: (1) plaintiff was occasionally unable to take breaks because her coworkers refused to cover for her, and they otherwise limited their association with her; (2) plaintiff found a "bloody or painted" doll on her home doormat; (3) plaintiff's work would occasionally go missing so she had to do it again, and coworkers would sometimes give plaintiff misinformation; (4) plaintiff was approached outside of work by two individuals not known to her; (5) the security cameras were reoriented so that plaintiff had a different view of visitors than previously, and the security door was left unlocked on occasion; (6) the air conditioner near where plaintiff sat at work was installed backwards; (7) plaintiff's chair smelled of urine on two occasions; and (8) a coworker showed plaintiff an e-mail forward containing pictures of a mausoleum. Additionally, plaintiff and Semidey had further work-related disagreements, and a management representative characterized plaintiff's complaints as "all petty" at a meeting convened to address their recurring interpersonal problems. Plaintiff and Semidey were offered the chance to move to

different positions so they would not need to work together, but it appears that neither accepted the opportunity.

Plaintiff filed another complaint ("Charge II") with the NYSDHR and the EEOC on October 14, 2008, alleging that she had faced continued discrimination as a result of having filed Charge I. That complaint listed several of the above events, though not all of them. (Fischer Aff., Ex. 2 at 1-2.) The NYSDHR dismissed Charge II on November 3, 2009 for lack of evidence of retaliatory discrimination, (id., Ex. 8 at 2-3), and the EEOC adopted the NYSDHR's findings on April 26, 2010. (Id., Ex. 9.)

After Charge II was filed on October 22, 2008, Semidey paced near plaintiff in an upsetting manner, and plaintiff subsequently noticed large kitchen knives in a dish rack in the lunch room, which caused her significant distress. Plaintiff thereafter requested a leave of absence, which defendant granted, from October 28, 2008 until January 15, 2009. Although plaintiff continued to be stressed by her work environment and treated unsatisfactorily after she returned from her leave, no specific events are alleged between January and October 2009. In October 2009, however, plaintiff received a written warning that she would be terminated if she continued to take unplanned absences from work. Thereafter, Burns began redoing or otherwise changing plaintiff's time sheets, though it is unclear if plaintiff alleges that they were actually being falsified.

On November 3, 2009, plaintiff was informed that she was being terminated due to her continued truancy.[2] Plaintiff then filed another complaint ("Charge III") with the NYSDHR and the EEOC on November 9, 2009, alleging that her termination was retaliation for filing Charges I and II. The NYSDHR dismissed the complaint on September 1, 2011 for lack of a causal connection between the earlier charges and plaintiff's termination. The EEOC adopted the NYSDHR's findings on November 2, 2011.

Plaintiff filed her complaint with this court on July 9, 2010 and amended the complaint on November 17, 2010.

## DISCUSSION

### I.   Legal Standard

When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S.

---

[2] Although it does not factor into the Court's decision, defendant asserts that plaintiff was absent from work a total of thirty-three days, of which twenty-five were unplanned absences, between her return from leave and her termination.

544, 570 (2007)). Where a plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." Twombly, 550 U.S. at 570. In making this determination, courts may consider exhibits to the complaint and documents incorporated into the complaint by reference, and "documents that are integral to the plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken." Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc., 645 F. Supp. 2d 210, 224 (S.D.N.Y. 2009) (quoting In re Gildan Activewear, Inc. Sec. Litig., 636 F. Supp. 2d 261, 268 n.3 (S.D.N.Y. 2009)).

Where, as here, a complaint is filed by a pro se plaintiff, the complaint should be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). In other words, courts must interpret such pleadings "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Nevertheless, pro se plaintiffs remain subject to the same general standard applicable to all civil complaints under the Supreme Court's decisions in Twombly and Iqbal. See Schwamborn v. Cnty. of Nassau, 348 F. App'x 634, 635 (2d Cir. 2009).

## II.  Timeliness and Exhaustion

Before commencing a Title VII action in federal court, a plaintiff must first exhaust the available administrative remedies by filing a charge with the EEOC or corresponding state agency.  See 42 U.S.C. § 2000e-5(f)(1).  If the charge is dismissed, the plaintiff must bring any claims within ninety days of being notified of the dismissal.  See id.; Brown v. Research Found. of SUNY Oneonta, 381 F. App'x 119, 120 (2d Cir. 2010).

The EEOC issued its dismissal of Charge I on October 5, 2009 and its dismissal of Charge II on April 26, 2010.  Pursuant to the ninety-day rule, the corresponding claims must have been asserted by January 3, 2010 and July 25, 2010, respectively. Plaintiff filed her complaint on July 9, 2010.  All claims traceable to Charge I are thus time-barred,[3] while the claims stemming from the events detailed in Charge II are timely.

Because the EEOC had not rendered a decision on Charge III at the time the complaint was filed, plaintiff's corresponding allegations were premature, but they are not necessarily barred. See Hourahan v. Ecuadorian Line, Inc., No. 95 Civ. 10698, 1996

---

[3] The Court may equitably toll the ninety-day requirement. Plaintiff, however, has given us no reason to think she was somehow prevented from pursuing her remedies, see Boos v. Runyan, 201 F.3d 178, 185 (2d Cir. 2000); McClendon v. Bronx Cnty. Dist. Attorneys Office, 764 F. Supp. 2d 626, 631 (S.D.N.Y. 2011) (requiring "exceptional circumstances truly beyond the control of the plaintiff" before equitable tolling is appropriate), so we strictly enforce the time limit.

U.S. Dist. LEXIS 19435, at *12 (S.D.N.Y. Jan. 3, 1997) ("[T]he possession of a right to sue letter is no longer considered a jurisdictional prerequisite to federal suit but is, instead, a statutory prerequisite subject to equitable modification by the court when appropriate."). In light of the discussion on the merits of the claims, the Court needs not decide the issue.

Of the claims that remain, certain must also be barred for failure to exhaust administrative remedies. Even if a claim is not specifically exhausted by an administrative charge, the claim may be permitted to proceed if it is "reasonably related" to claims in the charge. A plaintiff is not barred from raising unexhausted claims where they (a) "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," (b) "alleg[e] retaliation by an employer against an employee for filing an EEOC charge," or (c) "allege[] further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Butts v. City of N.Y. Dep't of Housing Preservation & Dev., 990 F.2d 1397, 1402-03 (2d Cir. 1993) (internal quotation marks omitted).

None of these exceptions saves plaintiff's race and gender discrimination claims. Although Charge II generally alleges "discrimination" and charges defendant "with violating Title VII," not one of the specific allegations mentions plaintiff's

race or gender even obliquely. Rather, the charge is rooted in the allegation that plaintiff was suffering retaliatory treatment because she filed Charge I. The allegations in Charge II are thus insufficiently related to plaintiff's claims for race and gender discrimination. See Hart v. N.Y. Univ. Hosps. Ctr., No. 09 Civ. 5159, 2011 U.S. Dist. LEXIS 116538, at *9-11 (S.D.N.Y. Oct. 7, 2011) ("If a claim is omitted from an EEOC charge and does not involve the same type of discrimination as that which was submitted for investigation, the omitted claim must be dismissed."). Indeed, the NYSDHR's determination does not mention plaintiff's race or gender, a strong indication that it would have been unreasonable to expect its investigation to encompass those matters. Nor are the newly asserted claims relevant to retaliation; retaliation is, in fact, the only type of claim actually alleged in the charge. The new claims also do not suggest a continuation of earlier-alleged conduct.

This same analysis applies to bar plaintiff's claims of race and gender discrimination in connection with Charge III. That charge alleges that the discrimination plaintiff met with was in response to her filing Charges I and II, and, as with Charge II, it nowhere mentions plaintiff's race or gender. Likewise, the NYSDHR determination does not address race or gender, and the other exceptions are simply inapplicable. Cf. Benardo v. Am. Idol Prods., Inc., No. 10 Civ. 6487, 2010 U.S.

Dist. LEXIS 129184, at *6-7 (S.D.N.Y. Dec. 6, 2010). Thus, to the extent plaintiff alleges race or gender discrimination in connection with the allegations contained in Charges II or III, those allegations are procedurally barred.[4]

## III. Retaliation

Plaintiff's only surviving federal claims are that of retaliation in the wake of her filing Charge I, as was alleged in Charge II, and after filing Charge II, as was alleged in Chare III. These claims should be dismissed for failure to state a claim upon which relief can be granted.

Title VII makes it unlawful for an employer to discriminate against an employee "because he has made a charge . . . or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, an employee must show (1) that she "engaged in protected participation or opposition under Title VII . . . , (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse action." Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461

---

[4] Plaintiff's allegations about being disturbed by Semidey and the kitchen knives shortly before she took her leave of absence are likewise too far afield from anything mentioned in Charge III to be properly considered by this Court.

F.3d 199, 205-06 (2d Cir. 2006) (internal quotation marks omitted).

Although "a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss," the claim asserted must still "be facially plausible" and "give fair notice to the defendants of [its] basis." Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (internal quotation marks omitted). Plaintiff's claims do not meet this standard.

**A.   The Events Following Charge I**

The acts of retaliation plaintiff alleges she experienced after filing Charge I can be grouped into three categories: (1) work-related incidents that are innocuous at worst and frequently no more than vaguely described, (2) events that occurred outside of the work environment, and (3) plaintiff's meeting with management where she and Semidey were offered the opportunity to take different positions.

An adverse action is one that "would have been materially adverse to a reasonable employee," such that the employee would be deterred from statutorily protected action. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). A simple inconvenience or disturbance is therefore insufficient to support a claim of retaliation. See id. at 68 (noting that "trivial harms" such as "those petty slights or minor annoyances

that often take place at work and that all employees experience"
do not constitute adverse actions); <u>Gatto v. Jet Blue Airways</u>,
No. 09 Civ. 983, 2010 U.S. Dist. LEXIS 2528, at *5-6 (S.D.N.Y.
Jan. 13, 2011). None of the assortment of workplace-related
incidents that plaintiff alleges rises beyond a level of
triviality. Moreover, the majority of the allegations do not
include indications of when the acts occurred or who committed
them. This information is essential to providing defendant fair
notice of the basis of the claims, and its absence justifies
dismissal. The alleged retaliatory conduct for which plaintiff
has named an actor was not perpetrated by plaintiff's employer,
but rather by coworkers who would have had no motive to
retaliate for the filing of a charge with the NYSDHR or the
EEOC, and is thus not a valid basis for a retaliation claim.

Plaintiff's allegations concerning the painted doll on her
doormat and being approached by strangers do not implicate
defendant. With no intelligible connection between the
allegations and defendant, no claim can plausibly be supported.

The allegations concerning plaintiff's meeting with
management do not amount to an adverse action. The comment that
plaintiff's complaints were "petty" is both accurate and itself
too trivial to be considered an adverse action. <u>See</u> <u>Ragin v. E.</u>
<u>Ramapo Cent. Sch. Dist.</u>, No. 05 Civ. 6496, 2010 U.S. Dist. LEXIS
32576, at *57-58 (S.D.N.Y. Mar. 31, 2010) (citing cases for the

proposition that a public upbraiding, without other consequences, does not constitute an adverse action). And plaintiff simply being offered another position, rather than required to take one, weighs strongly against a finding of an adverse action. Both she and Semidey were offered new positions, so there can be no inference of disparate treatment. Moreover, plaintiff does not allege that her job responsibilities changed as a result of the meeting or that her benefits or compensation were in any way diminished.

Plaintiff thus experienced no actionable retaliation as a result of filing Charge I.

**B.    The Events Following Charge II**

The generalized "[h]arrassment, [b]ullying, . . . [i]ntimidations, [and] [s]talking" plaintiff claims to have experienced after filing Charge II are too non-specific to support a retaliation claim. Her termination, however, is a specific adverse action upon which such a claim may be based.

Nevertheless, plaintiff's retaliation claim predicated on her termination must fail because she alleges no facts from which a causal connection between her filing of Charge II on October 14, 2008 and her termination on November 3, 2009 may be inferred. See Dansler-Hill v. Rochester Inst. of Tech., 764 F. Supp. 2d 577, 582 (S.D.N.Y. 2011) ("The crux of any retaliation claim is a cause-and-effect relationship whereby protected

activity precedes, and gives rise to, an adverse employment action."). A plaintiff may establish a causal connection between protected activity and an adverse action either "directly through evidence of retaliatory animus" or "indirectly with circumstantial evidence." <u>Sumner v. U.S. Postal Serv.</u>, 899 F.2d 203, 209 (2d Cir. 2009). Plaintiff here has alleged no facts to directly support a plausible finding of causality, and the year-long gap between the two events far exceeds the normal span of time from which causality may be inferred. <u>See, e.g.</u>, <u>Muhammed v. Juicy Couture/Liz Claiborne Inc.</u>, No. 09 Civ. 8978, 2010 U.S. Dist. LEXIS 108343, at *16 (S.D.N.Y. July 30, 2010) (noting that "many courts in this circuit have held that periods of two months or more defeat an inference of causation" and citing cases (internal quotation marks omitted)); <u>Reyes v. City Univ. of N.Y.</u>, No. 06 Civ. 3639, 2007 U.S. Dist. LEXIS 55101, at *14 (S.D.N.Y. July 26, 2007) ("It is well settled in this Circuit that the protected activity must be followed closely by discriminatory treatment[,] and it is equally well settled that more than three or four months does not qualify as following closely." (internal quotation marks, alterations, and citation omitted)). Nor has plaintiff plausibly alleged that individuals situated similarly to her "in all material respects" received different treatment. <u>Muhammed</u>, 2010 U.S. Dist. LEXIS 108343, at *19.

Plaintiff's retaliation claims do not satisfy the basic burden of pleading and must be dismissed.

## IV.  "Whistle Blower" Claims

In her complaint, plaintiff also denominates certain allegations as "whistle blower" claims. These include allegations that (1) certain employees would provide gifts to management to receive more hours, (2) job applicants who did not speak English would not be permitted to interview for positions unless they provided gifts to the interviewers, (3) a coordinator once falsified the hours an aide worked, and (4) some employees neglected or abused their clients. Plaintiff does not suggest which statute she brings these claims pursuant to, and the Court is unaware of any statute under which they are actionable.

The most likely candidate is New York's Labor Law, which prohibits "retaliatory personnel action against an employee because such employee . . . discloses . . . to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud," N.Y. Lab. Law § 740(2), as well as "retaliatory action against any employee because the employee . . . discloses . . . to a supervisor, or to a public body an activity, policy or

practice of the employer . . . that the employee, in good faith, reasonably believes constitutes improper quality of patient care." Id. § 741(2). It is an essential element of both sections that the adverse action have been taken as a result of the employee's reporting.

Taking all factual averments in the complaint as true and affording plaintiff all reasonable inferences, she has still failed to adequately allege that she was terminated or otherwise had adverse action taken against her because of any whistle-blowing activities.[5] With respect to many of her allegations, plaintiff does not allege that she ever made her concerns known to anyone else. The allegations that plaintiff did report are so temporally removed from her termination that there can be no plausible inference of causality.

Accordingly, plaintiff's "whistle blower" claims are dismissed.

## V.    Remaining State Claims

Plaintiff's complaint suggests the possibility of state claims under the New York State Human Rights Law, N.Y. Exec. Law

---

[5] Plaintiff has also inadequately alleged that she is an "employee" as defined in Section 741 (a person who "performs health care services"), see Reddington v. Staten Island Univ. Hosp., 373 F. Supp. 2d 177, 187 n.7 (E.D.N.Y. 2005) (plaintiff was not an "employee" for purposes of Section 741 because her role was "non-medical"), and she has not cited any law or rule that she reasonably believed in good faith to have been violated. See Deshpande v. Medisys Health Network, Inc., 896 N.Y.S.2d 103, 106 (2d Dep't 2010) (dismissing pro se claims under Section 741 on the above bases); see also Deshpande v. TJH Med. Servs., P.C., 861 N.Y.S.2d 697, 699 (2d Dep't 2008) (Section 740 requires allegations of an actual violation of a law or rule).

§ 296, as well. While "any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction," no such cause of action may be maintained if "such person had filed a complaint [with the NYSDHR] or with any local commission on human rights." N.Y. Exec. Law § 297(9).

Plaintiff filed three separate complaints with the NYSDHR, each alleging retaliation. Her election of this administrative remedy precludes her from pursuing state claims arising out of the events described in Charges I, II, and III in any court. See Illie-Stout v. Barrier Free Living, Inc., No. 08 Civ. 6388, 2009 U.S. Dist. LEXIS 1986, at *2 (S.D.N.Y. Jan. 12, 2009). The retaliation state claims are dismissed with prejudice.

To the extent plaintiff has any remaining state claims not raised before the NYSDHR, potentially including those related to race or gender discrimination, the Court declines to exercise supplemental jurisdiction over them. We have dismissed all of plaintiff's federal claims, so any justification for retaining jurisdiction over state claims is weak. See Baylis v. Marriott Corp., 843 F.2d 658, 664-65 (2d Cir. 1987). These claims, if they exist, are dismissed without prejudice to their refiling in state court.

## CONCLUSION

For the foregoing reasons, the motion (docket no. 16) is granted.


Dated:    New York, New York
          November 21, 2010

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE



Copies of the foregoing Order have been mailed on this date to the following:

**Plaintiff**
Linda Antonia Baez
2425 Lyvere Street, Apt. 1-F
Bronx, NY 10461

**Attorney for Defendant**
John F. Keil
Rebecca G. Fischer
Collazo Florentino & Keil LLP
747 Third Avenue, 25th Floor
New York, NY 10017

19